# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN SANTANA; and HURI MORENO,<br><br>　　　　　　　　　　Plaintiffs,<br>　vs.<br>FIRST NLC FINANCIAL SERVICES, LLC; AMERICAN CAPITAL FINANCIAL SERVICES, INC.; and SAXON MORTGAGE SERVICES INC.,<br><br>　　　　　　　　　　Defendants. | CASE NO. 08cv2228 JM (POR)<br><br>ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS |

Defendant Saxon Mortgage Services, Inc. ("Saxon") moves for judgment on the pleadings. Plaintiffs Susan Santana and Huri Moreno oppose the motion. Defendants First NLC Financial Services, LLC ("NLC Financial") and American Capital Financial Services, Inc. ("ACFS") have yet to appear in this action and did not file responses to the motion. Pursuant to Local Rule 7.1(d)(1), this matter is appropriate for decision without oral argument. For the reasons set forth below, the motion for judgment on the pleadings is granted.

## BACKGROUND

Plaintiffs commenced this federal question action on December 2, 2008 by filing a complaint for rescission and for damages under the Truth in Lending Act ("TILA") and Home Ownership and Equity Protection Act ("HOEPA"). Defendant NLC Financial is authorized to conduct consumer loan operations in California, (Compl. ¶6), and is the lender of the underlying disputed mortgage transaction. Defendant ACFS is the loan broker for Plaintiffs in this action, and Defendant Saxon the loan servicer. (Compl. ¶7).

1	Prior to entering into the underlying mortgage transaction, Plaintiffs' home was subject to a
2	mortgage with an unpaid balance of $269,012.40, an interest rate of 5.99%, and monthly payments
3	of $1,292. (Compl. ¶13). In June 2006 a broker from ACFS contacted Plaintiff Santana with an offer
4	to refinance her home. Even though Plaintiff Moreno did not live at the home and informed ACFS
5	that he would not occupy nor make any loan payments, (Compl. ¶16), ACFS requested that he co-sign
6	for the loan, which he did. On September 29, 2006, Plaintiffs borrowed an additional $20,704 and,
7	after points, fees and property taxes, had a new loan in the principal amount of $306,000, a disclosed
8	interest rate of 12.99%, and payments of $2,360.37 per month for 24 months, $3,075.80 for six
9	months, $3,443.38 for six months, $3,472.94 for 323 months and a balloon payment of $230,493.45
10	on November 1, 2036. (Compl. ¶¶20, 21). Plaintiffs allege that they provided NLC with notice of
11	rescission on July 10, 2008 and that NLC has not responded to its notice of rescission. (Compl. ¶¶36,
12	37).

13	Based upon the above generally described conduct, Plaintiffs seek to rescind the contract and
14	prosecute their claims for damages under TILA, HOEPA, and Cal.Bus. and Prof. Code §17200, et seq.
15	Saxon now moves for judgment on the pleadings on each claim. Plaintiffs oppose the motion.

16	**DISCUSSION**

17	**Legal Standards**

18	A Rule 12(c) motion challenges the legal sufficiency of an opposing party's pleadings.
19	Fed.R.Civ.P. 12(c). Like a Rule 12(b)(6) motion, the court must assume the truthfulness of the
20	material facts alleged in the complaint and all inferences reasonably drawn from the allegations must
21	be construed in favor or the responding party. See General Conference Corp. of Seventh-Day
22	Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir. 1989); Hal
23	Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1990). Defendants are
24	not entitled to judgment on the pleadings if the complaint raises issues of fact, which, if proved would
25	support the Plaintiffs' legal theories. See id.

26	For purposes of this motion, courts should grant 12(b)(6) relief only where a plaintiff's
27	complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory.
28	Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990). Courts should dismiss a

1 complaint for failure to state a claim when the factual allegations are insufficient "to raise a right to relief above the speculative level." <u>Bell Atlantic Corp v. Twombly</u>, __550 U.S. __, 127 S.Ct. 1955 (2007) (the complaint's allegations must "plausibly suggest[]" that the pleader is entitled to relief); <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009) (under Rule 8(a), well-pleaded facts must do more than permit the court to infer the mere possibility of misconduct). The defect must appear on the face of the complaint itself. Thus, courts may not consider extraneous material in testing its legal adequacy. <u>Levine v. Diamanthuset, Inc.</u>, 950 F.2d 1478, 1482 (9th Cir. 1991). The courts may, however, consider material properly submitted as part of the complaint. <u>Hal Roach Studios, Inc. v. Richard Feiner and Co.</u>, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).

Finally, courts must construe the complaint in the light most favorable to the plaintiff. <u>Concha v. London</u>, 62 F.3d 1493, 1500 (9th Cir. 1995), <u>cert. dismissed</u>, 517 U.S. 1183 (1996). Accordingly, courts must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. <u>Holden v. Hagopian</u>, 978 F.2d 1115, 1118 (9th Cir. 1992). However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a Rule 12(b)(6) motion. <u>In Re Syntex Corp. Sec. Litig.</u>, 95 F.3d 922, 926 (9th Cir. 1996).

**The Motion**

### The HOEPA and TILA Claims

Saxon argues that Plaintiffs fail to state a claim under either HOEPA or TILA for failure to adequately disclose the Annual Percentage Rate ("APR") because the disclosed interest rate is less than the triggering amount required for application of these statutes. The APR trigger for purposes of HOEPA is set forth in 15 U.S.C. § 1602(aa)(1)(B). That section provides:

> A mortgage referred to in this subsection means a consumer credit transaction that is secured by the consumer's principal dwelling, . . . if
>
> (A) the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for extension of credit is received by the creditor;

The TILA implementation regulation, known as Regulation Z, 12 C.F.R. §226.32, modifies HOEPA coverage to when:

> The annual percentage rate at consummation will exceed by more than 8 percentage point for first-lien loans, or by more than 10 percentage points for subordinate-lien

1
2
>loans, the yield on Treasury securities having comparable periods of maturity to the loan maturity as of the fifteenth day of the month immediately preceding the month in which the application for extension of credit is received by the creditor.

3    Plaintiff alleges that the disclosed APR of 12.9972% is subject to HOEPA and TILA because
4  the "yield on the Treasury securities having comparable periods of maturity (i.e. 30 years) on the 15th
5  day of the month immediately preceding October 2006 (i.e. September 2006) was 4.92%. Thus, the
6  APR trigger for purposes of HOEPA is 12.9200% (i.e. 4.92% + 8%)," (Compl. ¶26). Plaintiffs then
7  conclude that the disclosed rate exceeds the triggering amount by .0772% and is therefore actionable.

8    The difficulty with Plaintiffs' argument is that the base line Treasury APR is statutorily
9  calculated by looking to the rate "as of the fifteenth day of the month immediately preceding the
10 month in which the application for extension of credit is received by the creditor." 12 C.F.R. §226.32.
11 As the complaint alleges that "Plaintiffs submitted their credit application in September 2006,"
12 (Comp. ¶26), the applicable rate corresponds to the APR rate as of the preceding month, August 2006.
13 As the Treasury rate on August 14, 2006 was 5.05%, (RJN, Exh. A), the triggering amount was
14 13.05%, an amount in excess of the disclosed APR of 12.9972%. Accordingly, HOEPA and TILA
15 do not apply to the disclosed APR.

16    Plaintiffs argue that the loan closed on October 2, 2006 and therefore the court should apply
17 the September 2006 Treasury rate. This argument is not supported by the statutory scheme which
18 provides that the applicable period is the "month immediately preceding the month in which the
19 application for extension of credit is received by the creditor." 12 C.F.R. §226.32. Moreover,
20 Plaintiffs specifically allege that they "submitted their credit application in September 2006." (Compl.
21 ¶26). In light of this admission, the court grants the motion for judgment on the pleadings.

22 <u>The §17200, et seq. Claims</u>

23    Saxon moves to dismiss the §17200 claim on the ground that the alleged wrongful conduct is
24 not actionable in the case of the TILA or HOEPA related allegations, and that the generic allegations -
25 - "entering into loans with consumers in which they have charged interest rates above those allowable
26 by law" and "self-dealing at the expense of borrowers" (Compl. ¶46(a) and (b)) - - fail to state a claim
27 for relief. Section 17200 makes unlawful "three varieties of unfair competition – acts or practices
28 which are unlawful, or unfair, or fraudulent." <u>Cel-Tech Communications, Inc. v. Los Angeles Cellular</u>

1  Telephone Co., 20 Cal.App.4th 163, 180 (1999).

2  Here, the court concludes that the above identified allegations of wrongdoing fail to state a claim under §17200. With respect to allegations of unlawfulness based upon TILA or HOEPA violations, for the above stated reasons, Plaintiffs fail to state a claim that the APR was misrepresented. With respect to the "self-dealing at the expense of borrowers" claim, this allegation is too conclusory and imprecise to state a claim. Plaintiffs argue that the complaint alleges that "Defendants charged excessive interest," "Defendants have engaged in a pattern or practice of extending credit to consumers under high rate mortgages," and "Defendants induced them to borrow substantially more money than they were seeking and in an amount beyond their ability to repay." (Oppo. at p.5:18-22). The difficulty with these allegations is that Plaintiffs paint the lender, broker, and loan services with the same brush, without distinguishing the role Saxon, as loan servicer, played in the alleged §17200 scheme. While the court does not apply the Rule 9(b) standard to the §17200 claim, the claim must still comply with Rule 8. Plaintiff's central allegation that Defendants engaged in "self-dealing at the expense of borrowers" (Compl. ¶46(b)) is insufficient "to raise a right to relief above the speculative level." Twombly, __550 U.S. __, 127 S.Ct. 1955 (2007); Iqbal, - -S.Ct. - -, 2009 WL 1361536 (under Rule 8(a), well-pleaded facts must do more than permit the court to infer the mere possibility of misconduct). Accordingly, the conclusory allegations of alleged wrongful acts of unfair competition fail to state a claim.

In sum, the court grants the motion for judgment on the pleadings without prejudice. The court declines Plaintiffs request that they be permitted to amend the complaint. However, nothing in this order prevents Plaintiffs from timely moving to amend the complaint. Plaintiffs are advised that any such motion must be accompanied by the proposed amended complaint.

**IT IS SO ORDERED.**

DATED: June 11, 2009

Hon. Jeffrey T. Miller
United States District Judge

cc:        All parties